IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
PATRICK MICHAEL KAIPO VAHEY,    )
                                )
            Plaintiff,          )
                                )
    v.                          ) Civ. No. 18-00350-ACK-KJM
                                )
ANDREW SAUL,                    )
Commissioner of Social          )
Security                        )
                                )
            Defendant.          )
_____)


ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL
SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

        For the reasons discussed below, the Court REVERSES

the decision of the Commissioner and REMANDS to the ALJ for

further administrative proceedings consistent with this Order.

BACKGROUND

        On January 6, 2015, Plaintiff Patrick Michael Kaipo

Vahey ("Plaintiff") protectively filed an application for

supplemental security income ("SSI"), alleging disability

beginning on September 27, 2010.  Administrative R. ("AR") 377-

387.  The application was denied initially and then upon

reconsideration.  AR 313-16, 319-21.  Plaintiff then requested a

hearing before an administrative law judge ("ALJ"), which was

held on August 10, 2017, and at which Plaintiff appeared and

testified.  AR 252-77.

On October 16, 2017, the ALJ issued his written decision finding that Plaintiff is not disabled. AR 8-27. Plaintiff sought review by the Appeals Council and submitted for the first time with his request for review his treatment notes dated between January 2016 and September 2017, as well as an opinion report by a treating doctor, dated December 28, 2017. See AR 33-108, 109-251. The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner on July 24, 2018. AR 1-7.

Plaintiff filed a complaint on September 17, 2018, seeking review of the denial of his application for SSI benefits. ECF No. 1. He filed his opening brief ("Opening Brief"), ECF No. 15, on April 30, 2019, and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security (the "Commissioner"),[1] filed the answering brief ("Response Brief"), ECF No. 16, on May 31, 2019. Plaintiff then filed a reply brief ("Reply"), ECF No. 19, on June 15, 2019. The Court held a hearing on August 6, 2019. ECF No. 20.

**STANDARD**

A district court has jurisdiction pursuant to 42

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, after the parties had completed the briefing in this case. Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is "automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Accordingly, the case caption reflects Mr. Saul as the named defendant

U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[2/]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  Id. (internal quotation marks omitted).  Rather, courts "leave it to the ALJ to determine credibility, resolve

---

[2/] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

But reviewing courts must be cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009); see also S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) ("If th[e] grounds [invoked by the agency] are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis").

## DISCUSSION

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national

- 4 -

economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see also 42 U.S.C. § 1382c(a)(3)(B). A claimant must satisfy both requirements to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

## I. The Social Security Administration's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see also 20 C.F.R. § 416.920(a). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see also 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five. Tackett, 180 F.3d at 1098; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (noting that the burden shifts to the Commissioner at step five to show that the claimant can do other kinds of work).

At step one, the ALJ will consider a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds the claimant is engaged in substantial gainful activity, the ALJ will determine that the claimant is not disabled,

regardless of the claimant's medical condition, age, education, or work experience. Id. § 416.920(b). Substantial gainful activity is work that is defined as both substantial (work activity involving significant physical or mental activities) and gainful (work activity done for pay or profit). Id. § 416.972. If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. Tackett, 180 F.3d at 1098.

Under step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). Only if the claimant has an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities" will the analysis proceed to step three. Id. § 416.920(c). If not, the ALJ will find the claimant is not disabled and the analysis ends there. Id. § 416.920(a)(4)(ii).

The ALJ also considers the severity of the claimant's impairments at step three. 20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment described in the regulations. Id.; see also id. § 416.925; id., Part 404, Subpart P, App. 1. If the impairments meet or equal these criteria, the claimant is deemed disabled and the analysis ends.

20 C.F.R. § 416.920(a)(4)(iii).  If not, the analysis proceeds to step four.  Id. § 416.920(e).

Step four first requires the ALJ to determine the claimant's residual functional capacity ("RFC").  Id.  RFC is defined as the most the claimant can do in a work setting despite his physical or mental limitations.  Id. § 416.945(a)(1).  In assessing a claimant's RFC, the ALJ will consider all of the relevant evidence in the claimant's case record for both severe and non-severe impairments.  Id.  The ALJ then uses this assessment to determine whether the claimant can still perform his past relevant work.  Id. § 416.920(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1).  The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end. Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will again consider the claimant's RFC—as well as his age, education, and work experience—to determine whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in

the national economy that [the claimant] can do." Id. §
416.960(c)(2); see also id. § 416.920(g).  If the claimant is
unable to perform other work, he is deemed disabled.  20 C.F.R.
§ 416.920(g).  If he can make an adjustment to other available
work, he is considered not disabled.  Id.

## II.   The ALJ's Analysis

The ALJ found at step one that Plaintiff had not
engaged in substantial gainful activity since January 6, 2015,
the application date, and at step two that he suffers from the
following severe impairments:  schizoaffective disorder, type
II; substance abuse, in probable remission; hypertension;
degenerative changes of the lumbar spine, with lower lumbar
facet arthropathy and radiculopathy.  AR 13.  At the third step,
the ALJ found that Plaintiff does not have an impairment or a
combination of impairments that meet or medically equal the
severity of an impairment listed in 20 C.F.R. Part 404, Subpart
P, Appendix 1.  AR 13-15.

Moving to step four, the ALJ determined that Plaintiff
has the RFC to

> perform light work as defined in 20 CFR
> 416.967(b), except he could lift, carry, push
> or pull 20 pounds occasionally and 10 pounds
> frequently; he could stand/walk for six hours
> out of eight, with normal breaks; he could
> perform occasional postural activities, such
> as climbing, stooping, kneeling, crouching,
> and crawling; he could perform frequent
> balancing; he could frequently reach in all

directions, including overhead; he must avoid
hazardous machinery and unprotected heights,
to include no ladders, ropes, or scaffolds; he
does not require the use of an assistive
device; he is limited to simple and routine
tasks; he is limited to a non-public
environment; he cannot perform fast-paced
work, such as work on a conveyor belt; he is
limited to non-intense interaction with
coworkers and supervisors; he cannot perform
work requiring hypervigilance.

AR 15.  Using this RFC, the ALJ determined at step four that
Plaintiff is unable to perform past relevant work.  AR 21.

Finally, turning to step five, the ALJ determined that
a finding of "not disabled" was appropriate because Plaintiff is
capable of engaging in a type of substantial gainful activity
that exists in significant numbers in the national economy.  AR
21-22.  Specifically, the ALJ relied on the vocational expert's
testimony that Plaintiff would be able to perform certain
representative occupations, including "1) Cleaner, DOT #323.687-
014, light, SVP 2, and with approximately 127,000 positions in
the U.S.; 2) Hand Packer, DOT 920.687-018, light, SVP 1, and
with approximately 10,000 positions in the U.S.; 3) Office
Helper, DOT #239.567-010, light, SVP 2, and with approximately
40,000 positions in the U.S.  AR 22.

## III.  Plaintiff's Challenge on Appeal

Plaintiff does not appear to challenge any of the
findings the ALJ made at the first three steps.  See gen.
Opening Br.  Plaintiff instead challenges the ALJ's

determination at step five (which was mostly based on factual findings made at step four), that jobs exist in significant numbers in the national economy that Plaintiff can perform. See id.; see also AR 15-22. He argues that the ALJ's findings and conclusions are not supported by "substantial evidence" in the record (including evidence submitted for the first time to the Appeals Council), that the ALJ improperly weighed or rejected the testimony of certain medical professionals, and that the ALJ erred in his analysis of Plaintiff's credibility.

## IV. Whether the New Medical Evidence Submitted to the Appeals Council is Properly Part of the Record

The Court first addresses the scope of the Administrative Record reviewable by this Court. At issue is nearly 200 pages of evidence submitted by Plaintiff to the Appeals Council after the ALJ issued his decision. The parties' briefs oversimplify the relevant rules for deciding whether newly-submitted evidence is part of the record. Of particular note is a recent change to the SSA regulations requiring that the claimant show "good cause" for the failure to timely submit evidence to the ALJ before such evidence may be "considered" by the Appeals Council. See 20 C.F.R. § 416.1470(b). The Court raised these issues at the hearing in this appeal, apparently much to the surprise of both parties. They ultimately seemed to agree that good cause was "not an issue," and counsel for the

Commissioner conceded that the newly-submitted evidence is properly in the Administrative Record, regardless of good cause. Despite counsel's unequivocal statement at the hearing that the Commissioner does not challenge good cause, the Court will briefly address the regulatory overlay given that it defines the record before this Court.

### A. Legal and Regulatory Standards

The scope of the record before the reviewing district court is dependent on what evidence the Appeals Council considered or should have considered. "When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin, 682 F.3d 1157, 1163 (9th Cir. 2012). But if the Appeals Council does not consider evidence submitted to it, such evidence does not become part of the administrative record before the reviewing court. See Bales v. Berryhill, 688 F. App'x 495, 496 (9th Cir. 2017); see also Knipe v. Colvin, No. 3:14-CV-01533-SI, 2015 WL 9480026, at *5 (D. Or. Dec. 29, 2015) (collecting district court cases to this effect). In this analysis, "consider" is a term of art. West v. Berryhill, No. 18-cv-00092-DKW-RT, 2019 WL 362259, at *5 (D.

Haw. Jan. 29, 2019) ("[L]ooking at additional evidence is not
the same thing as considering it.").

The Social Security regulations permit a claimant to
submit new and material evidence to the Appeals Council and
"require the Council to consider that evidence in determining
whether to review the ALJ's decision, so long as the evidence
relates to the period on or before the ALJ's decision. Brewes,
682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b) (effective to
Jan. 16, 2017)).[3/] Effective January 17, 2017, the SSI
regulation allows a claimant to submit "additional evidence that
is new, material, and relates to the period on or before the
date of the hearing decision, and there is a reasonable
probability that the additional evidence would change the
outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

Unlike the prior version, the recently-enacted
regulation provides that "the Appeals Council will only consider
additional evidence . . . if [the claimant] show[s] good cause
for not informing [SSA] about or submitting the evidence as
described in § 416.1435 . . . ." 20 C.F.R. § 416.1470(b); see
also Reyes v. Comm'r of Soc. Sec. Admin., No. CV-17-08192-PCT-
SMB, 2019 WL 2098755, at *2 (D. Ariz. May 14, 2019) ("After the

---

[3/] The relevant provisions governing SSI set forth in 20 C.F.R. Part
416 are virtually identical to those for SSDI set forth in 20 C.F.R. Part
404. Accordingly, the rationale many cases adopt in analyzing one regulation
often applies equally in analyzing the other.

new rule went into effect, a claimant must show 'good cause' for not submitting the evidence at least five days prior to his ALJ hearing."). The new regulation was effective January 17, 2017, but compliance became mandatory on May 1, 2017, following a brief grace period. See Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 FR 90987-01, 2016 WL 7242991 (Dec. 16, 2016).

Two questions follow from the above framework where, as here, a claimant submitted new evidence to the Appeals Council: whether the Appeals Council "considered" or should have considered the new evidence and whether remand is appropriate for the ALJ's consideration of the new evidence.[4]

## B. Additional Evidence Submitted by Plaintiff

The evidence Plaintiff submitted to the Appeals Council can be divided into two categories: (1) treatment notes and records from Waianae Coast Comprehensive Health Center Behavioral Health Center (the "Health Center"), dated between December 2015 and September 2017, AR 36-107, 116-251 ("Pre-

---

[4]   42 U.S.C. § 405(g) provides two mechanisms for remanding a case if there is new evidence not before the ALJ:  a "Sentence Four" remand and a "Sentence Six" remand. See Will v. Colvin, No. 3:14-cv-00754-JE, 2016 WL 3450842, at *6-11 (D. Or. May 18, 2016). A Sentence Four remand is appropriate for evidence submitted to the Appeals Council and either made part of the record or erroneously not incorporated into the record. Id.; see also Johnson v. Acting Comm'r of Soc. Sec. Admin, No. 9:18-00090-RBH, 2019 WL 2717860, at *6 n.4 (D.S.C. June 27, 2019) (discussing Sentence Four and Six remands). A Sentence Six Remand applies to consideration of supplemental evidence outside the record when the evidence is new and material and when good cause exists for failing to incorporate the evidence in a prior proceeding. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

Decision Records"); and (2) treatment notes and records from the Health Center, dated November 1, 2017, through November 30, 2017, AR 108-115, as well as a medical source statement by treating Dr. Sherry Sutherland Choy, dated December 28, 2017, AR 33-35 ("Post-Decision Records"). The former category involves treatment notes made <u>before</u> the ALJ's October 16, 2017 decision and during the relevant time period, while the latter category involves treatment notes and a report of a treating psychologist made <u>after</u> the ALJ's decision.

### C. The Appeals Council's Decision

In its letter to Plaintiff denying his request for review, the Appeals Council separately addressed the Pre- and Post-Decision Records. First, the Appeals Council stated the following of the Pre-Decision Records:

> We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

AR 2. As for the Post-Decision Records, the Appeals Council stated that the evidence does not relate to the time period at issue and advised Plaintiff to reapply for a later period:

> The Administrative Law Judge decided your case through October 16, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 16, 2017.

If you want us to consider whether you were
disabled after October 16, 2017, you need to
apply again.  If you file a new claim for
supplemental security income within 60 days
after you receive this letter, we can use
October 26, 2017, the date of your request for
review, as the date of your new claim.  The
date you file a new claim can make a difference
in the amount of benefits we can pay.

AR 2.

Nowhere in its denial letter did the Appeals Council
address the late submission of the evidence, including whether
Plaintiff offered "good cause" for the delay.

### D. Analysis

#### i. The Good Cause Requirement

The Appeals Council denied review on July 25, 2018, so
it should have applied the new version of the regulation with
the good cause requirement.[5/]  The Court is puzzled by the
parties' apparent unawareness of the applicability of the new
regulation.  Likewise, it is even hard to say how (or whether)
the Appeals Council applied the SSA's own regulation, given that
the denial letter is devoid of any good cause discussion.  See
AR 1-4.  Nonetheless, the Court appreciates that the parties do
not make much of the "good cause" issue, and counsel conceded—

---

[5/]  Most courts apply the new regulation to decisions issued by the
Appeals Council after the May 2017 compliance date.  See, e.g., Bisbee v.
Berryhill, No. 18-0731 SMV, 2019 WL 1129459, at *3 n.4 (D.N.M. Mar. 12,
2019); McIntyre v. Berryhill, No. 17-14347-CIV-MAYNARD, 2018 WL 5621483, at
*6 (S.D. Fla. Oct. 30, 2018).  Here, the Appeals Council denied review on
July 24, 2018, and the ALJ conducted a hearing on August 10, 2017, and issued
a decision on October 16, 2017—all well after the compliance date.  See AR 1-
22.

explicitly at the hearing and implicitly in the Response Brief—
that the Commissioner does not challenge consideration of the
evidence for good cause. That being the case, the court will
focus its analysis on whether, notwithstanding good cause, the
Appeals Council "considered" evidence such that it is part of
the Administrative Record.

Before getting to that analysis, the Court takes this
opportunity to reiterate that new evidence can only be part of
the record if the Appeals Council "considered" it. And, under
the new regulation, the Appeals Council could only "consider"
evidence upon a showing of good cause. See Norbert S. v.
Berryhill, No. 18-cv-00218-AC, 2019 WL 2437457, at *10 (D. Or.
June 11, 2019). Two possible implications then arise. Either
the Appeals Council implicitly found good cause when it
"considered" the evidence, or the Appeals Council was not
permitted to "consider" the evidence in the first place.[6/]

Had the Appeals Council—or the parties, for that
matter—addressed this issue by stating that Plaintiff did or did
not have good cause, the Court may have been in a better
position to accept or reject the additional evidence and to

---

[6/] As far as the Court can tell, the Appeals Council did not explicitly
waive the good cause requirement as it did for some claimants after the new
regulation took effect. See AR 28 (letter to Plaintiff's counsel stating,
"You must show good cause for why you missed informing [the Council] about or
submitting [the evidence] earlier"); see, e.g., West, 2019 WL 362259 at *5-6
(recognizing Appeals Council's waiver of good cause requirement).

include or exclude it from the record.  See, e.g., <u>Knowlton v.</u>
<u>Berryhill</u>, No. CIV 18-0194-KBM, 2019 WL 1299669, at *5 (D.N.M.
Mar. 21, 2019) (endorsing the Appeals Council's determination
that claimant did not show good cause and excluding from
record).  Instead, the Court can only speculate.

Though the Court is not convinced that Plaintiff had
good cause for belatedly submitting the Pre- and Post-Decision
Records, neither can it ignore the possible significance of
treatment notes and a report of a treating specialist, at least
some of which is relevant to the period in question.  In light
of these concerns and the parties' agreement that a lack of good
cause does not preclude consideration of the Pre- and Post-
Decision Records, the Court concludes that remand would be
appropriate to allow for further administrative proceedings.
<u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1176-78 (9th Cir. 2000)
(recognizing court's discretion whether to remand for further
proceedings); <u>see also</u> <u>Parvon v. Colvin</u>, No. 15-00110 ACK-BMK,
2016 WL 1047992, at *17 (D. Haw. Mar. 11, 2016) (finding remand
to be appropriate because it was unclear how ALJ would have
treated new evidence).

As discussed <u>infra</u>, several other factors also
convince this Court that remand to the SSA for reconsideration
is necessary under these circumstances.

### ii. Consideration of the Pre- and Post-Decisions Records

The Court will now put aside the "good cause" issue and turn to whether the Appeals Council otherwise "considered" the new evidence such that it is part of the record. Because the Appeals Council addressed the Pre- and Post-Decision Records separately, the Court will do the same.

### 1. Pre-Decision Records

Both parties assume that the Pre-Decision Records are part of the Administrative Record. See Opening Br. 28-29 (explaining that the ALJ decision must be supported by "substantial evidence," including the Pre-Decision Records); Resp. Br. 21 ("These [Pre-Decision] notes are a part of the record before this Court.").[7] In addressing the Pre-Decision Records, the Appeals Council stated, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." AR 2.

Several courts in this circuit have analyzed similar language: Some have read it to mean that the Appeals Council necessarily "considered" the newly-submitted evidence, and

---

[7] The parties confirmed this position at the hearing as well. Much like the "good cause" point, the parties oversimplify the relevant rules for deciding whether the Appeals Council "considered" or merely "looked at" new evidence.

others have concluded that the Council's express statement that
it did not "consider" or "exhibit" evidence means it only
"looked at" the evidence.[8/] Compare Ramirez v. Shalala, 8 F.3d
1449, 1452 (9th Cir. 1993) (holding that the Appeals Council
declined to review by "considering the case on the merits;
examining the entire record, including the additional material;
and concluding that the ALJ's decision was proper and that the
additional material failed to 'provide a basis for changing the
hearing decision'"), and Reyes, 2019 WL 2098755 at *3 (holding
that the Appeals Council's statement that the evidence does not
show a reasonable probability of changing the ALJ decision—
despite its statement that it did not "consider and exhibit
th[e] evidence"—meant that it "made a finding about the merits
of the additional evidence" and the evidence was "part of the
record"), with de Orozco, 2019 WL 2641490 at *11 ("Here, the
Appeal's Counsel [sic] only looked at the evidence and
determined that there was no reasonable probability that the
newly-submitted evidence would change the outcome of the
decision.  Therefore, the new evidence was not considered or
exhibited.  As the new evidence did not become part of the
record, this Court may not review it." (citations to record
omitted)).  See also Norbert S., 2019 WL 2437457 at *10

---

[8/]  The Court notes that many of these cases were either decided before
the new regulations established a good cause requirement or during the grace
period, so they do not consider the implication of good cause.

- 19 -

(discussing "a series of decisions that distinguished evidence the Appeals Council formally 'considered' and made part of the administrative record, and therefore subject to judicial review").

Presumably, to decide that the Pre-Decision Records would not change the outcome of the decision, the Appeals Council would have needed to "consider" those records. But there is the added confusion here of the Appeals Council's statement that it would not "exhibit" the evidence.[9/] AR 2; see also Linnehan v. Berryhill, No. 17-cv-04146-JSC, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) ("The Appeals Council cannot consider the evidence to conclude that it 'does not show a reasonable probability that it would change the outcome of the decision' and then exclude the evidence from the record based on the illogical conclusion that '[w]e did not consider and exhibit this evidence.'").

At least one district court in the Ninth Circuit grappling with similar language held that, "[b]ecause the evidence related to the period of time before the ALJ's decision and bears on the question of disability, this evidence is part

---

[9/]  Despite the Appeals Council's statement that it did not "exhibit" the evidence, all the Pre- and Post-Decision Records can be found in the Administrative Record of this case.  However, they fall under the "Court Transcript Index" rather than under the Administrative Record's "Exhibits" list or under the exhibits to the Appeals Council denial letter.  See Court Transcript Index; see also AC Exhibits List, AR 5.  And the Appeals Council's denial letter lists only Plaintiff's request for review as an exhibit; it does not separately list the Pre- or Post-Decision Records.  AR 6.

of the record the Court must consider in determining whether the

ALJ's decision is supported by the substantial evidence."

Linnehan, 2018 WL 6267846 at *8.  Another held that, even though

the Appeals Council stated that it did not "consider" the

material, the additional evidence became part of the record

because the court was "unable to reconcile that statement with

the previous sentence in the order finding that the evidence

d[id] not show a reasonable probability of changing the ALJ's

decision."  Reyes, 2019 WL 2098755 at *3.

        A judge in this district recently held the opposite.

See West, 2019 WL 362259 at *5 ("[T]he Court cannot find that

the Appeals Council considered the additional evidence . . . as

[the regulation] envisions.").  In West, the court remanded to

the ALJ because it was not clear from the Appeals Council's

denial letter that it had properly considered the additional

evidence:

> The Appeals Council's decision, however, is
> clear in one respect:  "We did not consider
> and exhibit this evidence."  In a vacuum,
> those words could not be clearer.  Doubt is
> arguably created, however, by the preceding
> sentence in the Council's decision:  "We find
> this evidence does not show a reasonable
> probability that it would change the outcome
> of the decision."  It would seem difficult to
> reach such a conclusion without considering or
> looking at—in some fashion—[the medical]
> opinions.  In light of the clarity of the
> Appeals Council's statement that it did not
> consider [the] opinions, though, this Court
> can only speculate about what the Appeals

> Council meant in stating that [the] opinions
> would not change the outcome of the case."
> Obviously, if the Appeals Council did not
> consider those opinions in any fashion, then
> the opinions would not make it reasonably
> probable that the outcome of the case would
> change.  Nothing, after all, is nothing.  It
> is, perhaps, more likely that the Appeals
> Council looked at [the] opinions, determined
> that they would likely not change the outcome
> of this case, and then stated, in boilerplate
> fashion, that the opinions had not been
> considered.

Id.[10/]  Likewise, in Kekaula, this Court took the Appeals Council

at its word that it "did not consider and exhibit" the evidence.

Kekaula v. Berryhill, No. 17-00551 ACK-KJM, 2018 WL 3146590, at

*7-8 (D. Haw. June 27, 2018).

Here, the Commissioner tries to distinguish West and

Kekaula to avoid remand:  "this case differs from other cases in

which the Court has remanded because the Appeals Council did not

consider newly submitted evidence."  Resp. Br. 21-22 (citing

West, 2019 WL 362259 at *11-17; Kekaula, 2018 WL 3146590 at *8).

But the Commissioner offers no explanation to truly distinguish

the cases, other than the assertion that the Appeals Council

here did consider the Pre-Decision Records.  See id.[11/]

---

[10/]  Notably, the appeal in West took place before compliance with the
"good cause" change to the regulation was required.  West, 2019 WL 362259 at
*5.  The Appeals Council in West had thus deemed the good cause requirement
"satisfied."  Id.  The court interpreted the regulation to mean that, because
good cause was satisfied, the Appeals Council was required to "consider" the
evidence, but the Council's boilerplate explanation did not reflect that it
had done so.  Id.
[11/]  One possible distinction is that, in West and Kekaula, the Appeals
(Continued . . .)

Either way, the Court cannot be sure to what extent the Appeals Council "considered" or just "looked at" the Pre-Decision Records.  If the Pre-Decision Records were considered, then this Court is in the position of conducting a post hoc review of several hundred pages of relevant treatment notes to decide whether they support the ALJ's earlier decision.  If they were not considered, then relevant treatment notes informative of Plaintiff's treatment, symptoms, and psychological impairments during the period at issue are disregarded.

Other district courts reviewing similar cursory or conflicting rationales by the Appeals Council will sometimes review the evidence for themselves to decide whether it would impact the outcome.  E.g., Velez v. Berryhill, No. 3:18-cv-01024(SALM), 2019 WL 2052013, at *6 (D. Conn. May 9, 2019); Thor v. Berryhill, No. 18-cv-538-NEB-KMM, 2018 WL 7141873, at *5-6 (D. Minn. Dec. 13, 2018); Janice M. v. Comm'r, Soc. Sec. Admin., No. 6:17-cv-01635-SU, 2018 WL 7142180, at *5 (D. Or. Oct. 16, 2018).  Were it not for the nearly 200 pages of highly-relevant

Council had stated that it did not "consider and exhibit" the evidence; whereas, here, the Appeals Council said only that it did not "exhibit" the evidence.  AR 2; see West, 2019 WL 362259 at *11-17; Kekaula, 2018 WL 3146590 at *8.  The Court is not aware of any cases in this circuit addressing this variation of the Council's language.  Arguably, "we did not consider and exhibit" states more definitively than "we did not exhibit" that the Council had not "considered" evidence.  At the same time, had the Council "considered" the evidence, presumably they would have exhibited it. Counsel for the Commissioner did not shed any light on this issue at the hearing, instead reiterating his assumption that the Appeals Council here "considered" the evidence.

treatment notes submitted here, the parties' competing interpretations, and the other bases for remand discussed <u>infra</u>, the Court might be inclined to do the same.  But the Pre-Decision Records make up a significant portion of the records submitted to this Court.  And, more importantly, the Pre-Decision Records comprise treatment notes by Plaintiff's treating psychologists, all of whom treated Plaintiff for some portion of the relevant period.

To summarize, "[t]he Appeals Council's perfunctory statement declining to review this material essentially leaves the Court without any idea as to whether the Council's ruling was correct, and with no way to make that determination except to scrutinize the records on its own.  This the Court declines to do."  <u>Mendez v. Comm'r of Soc. Sec.</u>, No. 17-cv-6824-CJS, 2019 WL 2482187, at *4 (W.D.N.Y. June 14, 2019).

The reviewing district court has discretion to remand for further administrative proceedings.  <u>See</u> <u>Harman</u>, 211 F.3d at 1177-78.  At this point, the Court can only speculate whether the Appeals Council "considered" the Pre-Decision Records.  With this uncertainty, the Court sees remand as the only option, to allow the ALJ to reconsider the evidence under the relevant standards.  <u>Cf.</u> <u>Treichler</u>, 775 F.3d at 1098 (noting that courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record");

<u>Theresa M. K. v. Comm'r, Soc. Sec. Admin</u>, No. 1:18-cv-01221-MK, 2019 WL 2550317, at *14 (D. Or. June 20, 2019) ("[Whether to remand] turns on the utility of further proceedings.").

## 2. Post-Decision Records

There is some disagreement and confusion among the Parties about whether the Appeals Council "considered" or properly rejected the Post-Decision Records.[12/] Plaintiff argues that the Appeals Council erred in "declin[ing] to consider any records dated in the three months after the ALJ's Decision." Opening Br. 28-29. The Commissioner argues that Plaintiff "cannot obtain a reversal of the October 2017 decision based on a subsequent opinion that is not consistent with the record from before 2017." AR 24 (footnote omitted). In addressing the Post-Decision Records, the Appeals Council stated, "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 16, 2017." AR 2.

The Court first holds that the Appeals Council did not "consider" the Post-Decision Records. Generally, the language used by the Appeals Council here is interpreted that way. <u>See, e.g.</u>, <u>Ruth v. Berryhill</u>, No. 1:16-CV-0872-PK, 2017 WL 4855400,

_____

[12/] This confusion bore out at the hearing as well. Plaintiff's counsel argued that the Appeals Council erred by not considering the Post-Decision Records at all, while counsel for the Commissioner tried to articulate whether the Appeals Council had "considered" the records versus "looked at" them and deemed them irrelevant.

at *8-9 (D. Or. Oct. 26, 2017) (holding that similar language meant the Appeals Council did not consider the newly-submitted medical evidence); Linden v. Colvin, No. 3:16-CV-05308-DWC, 2017 WL 275364, at *9 (W.D. Wash. Jan. 20, 2017) ("The Appeals Council conducted a threshold evaluation to determine whether the evidence was relevant, but did not 'consider' the additional medical evidence on the merits."). Based on the Appeals Council's explanation, it more likely "evaluated the new medical evidence, determined the evidence was not relevant to Plaintiff's application for disability benefits as it did not relate to the period at issue, and thus did not 'consider' the evidence in evaluating the ALJ's decision or include the evidence in the Administrative Record." Linden, 2017 WL 275364 at *8.

The Ninth Circuit, however, has held that medical records or evaluations dated after an ALJ's decision may be relevant if they concern the claimant's condition during the period in question. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"). But see Whitten v. Colvin, 642 F. App'x 710, 713 (9th Cir. 2016) ("Here, the evidence submitted to the Appeals Council post-dated the ALJ's decision and, therefore, the Commissioner properly did not include it in the

administrative record."). Thus, the Appeals Council's rejection of evidence is improper if it is merely based on the evidence being dated outside the relevant time period. See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011).

Here, the Post-Decision Records consist of treatment notes and a medical opinion report by Plaintiff's treating psychologist, Dr. Sutherland Choy. These materials may have some probative value given that they include opinions of a psychologist who had been treating Plaintiff well before the ALJ decision. AR 140-43 (showing that Dr. Sutherland Choy had treated Plaintiff at least as far back as November 2016). The Court cautions, however, that any evidence that Plaintiff's symptoms worsened only after the ALJ decision could limit the relevance of Dr. Sutherland-Choy's report or records. Cf. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (holding that post-ALJ decision medical opinions were relevant "[a]bsent a reason to think [claimant] experienced a major symptom change in the three months before she met [the doctor]").

In these circumstances, the Court concludes that further proceedings would be useful to allow the ALJ to evaluate

the relevance and impact of the Post-Decision Records, if any.[13/]

See Mengistu v. Colvin, 537 F. App'x 724, 725 (9th Cir. 2013);

see also West, 2019 WL 362259 at *5 ("When the Appeals Council

fails to consider additional evidence that satisfies the

requirements of Section 404.970(b), remand to the ALJ is

appropriate."); Daywitt v. Colvin, No. CV-15-02476-PHX-BSB, 2017

WL 393601, at *4 (D. Ariz. Jan. 30, 2017) (remanding for further

proceedings "[b]ecause neither the ALJ nor the Appeals Council

considered evidence that post-dated the ALJ's decision, but that

reflected Plaintiff's ongoing medical care").

## V.  Whether the ALJ Erred in His Assessment of Certain Medical Opinions

As discussed in Section IV, remand is appropriate to

allow the ALJ to reconsider the case in light of documents

submitted after the ALJ issued his decision.  Remand is also

appropriate because the ALJ did not fully develop the record as

to Plaintiff's daily activities—including his "work" on his

family's fish farm and ability to "catch the bus"—such to reject

medical opinions and symptom testimony.

In his Opening Brief, Plaintiff argues that the ALJ

rejected certain psychologists' medical opinions "with improper

---

[13/]   The Court declines to comment on whether these records would in fact change the outcome of the ALJ decision or the RFC.  On remand, the ALJ should consider whether the Post-Decision Records might be material and relevant to the disability determination during the relevant time period and what impact they would have on the disability determination.

reasons or by ignoring them completely."[14/]  Plaintiff argues

that the ALJ improperly rejected portions of three medical

opinions by relying on undeveloped testimony related to

Plaintiff's "work" on his family's fish farm.  Opening Br. 12-

15.  Two opinions are from Plaintiff's treating psychologists,

Dr. Taylor and Dr. Hermosura, and the third opinion is from Dr.

Fishman, who examined Plaintiff to aid the State of Hawaii in

assessing disability benefits.  Opening Br. 25-27.

### A. Standards for Weighing Medical Opinion Evidence

In assessing whether a claimant is disabled, the ALJ

must "develop the record and interpret the medical evidence."

Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing

Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)).  However,

the ALJ is not obligated to discuss "every piece of evidence"

where the evidence is "neither significant nor probative."  Id.

The applicable regulations state that the Agency will

consider all the medical opinions it receives.  See 20 C.F.R. §

416.927(b)-(c).  But in the realm of social security

adjudications, medical opinions are not all created equal:

"Cases in this circuit distinguish among the opinions of three

---

[14/]  Plaintiff's counsel confirmed at the hearing that Plaintiff
challenges the ALJ's findings only with respect to Plaintiff's claimed
psychological ailments, not physical.  See gen. Opening Br.; see also AR 16-
17.  Rather, he focuses his appeal on the ALJ's assessment of medical
opinions related to Plaintiff's psychological impairments.  See gen. Opening
Br.; see also AR 17-20.

types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."[15/] <u>Lester</u>, 81 F.3d at 830; <u>see also</u> 20 C.F.R. § 416.927(c)(2). "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1160 (9th Cir. 2014) (citing <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)).

A treating physician's opinion should be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." <u>Ghanim</u>, 763 F.3d at 1160 (quoting <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007)) (alteration in original). "To reject an uncontradicted opinion of a treating physician, the ALJ must provide 'clear and convincing reasons that are supported by substantial evidence.'" <u>Id.</u> at 1160-61 (quoting <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005)).

---

[15/] The Court notes that for claims filed on or after March 27, 2017, the treating source rule does not apply. <u>See</u> 20 C.F.R. § 416.920c.

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." Id. at 1161.  Rather, to determine how much weight to give a treating physician's opinion, the ALJ must consider several factors to decide how much weight to give a treating doctor's opinion: the length of the treatment relationship and frequency of examination by the treating physician; the nature and extent of the treatment relationship between the patient and the treating physician; the supportability of the treating physician's opinion with medical evidence; the consistency of the treating physician's opinion with the record as a whole; and whether the treating physician is a specialist.  Id.; see also 20 C.F.R. § 416.927(c)(1)-(6).

An ALJ may only reject a treating physician's contradicted opinions by providing "specific and legitimate reasons that are supported by substantial evidence." Ghanim, 763 F.3d at 1161.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  "[A]n ALJ errs when he rejects

a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. Id. at 1012–13.

Similarly, an examining doctor's opinion is entitled to greater weight than that of a nonexamining doctor. Lester, 81 F.3d at 830. The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining doctor. Id. at 830-31. And if the opinion is contradicted by another doctor, the ALJ can only reject it by providing specific and legitimate reasons that are supported by substantial evidence in the record. Id.

With this framework in mind, the Court considers whether the ALJ properly rejected certain medical opinions.

**B. Whether the ALJ Improperly Rejected the Opinions of Treating Psychologist, Dr. Taylor**

### i. Medical Opinions, the ALJ's Analysis, and the Parties' Arguments

Dr. Taylor is a psychologist who treated Plaintiff during the relevant period, from April 30, 2015, through June 26, 2017. Opening Br. 20-22; see also AR 18-19, 85, 616. On May 13, 2015, Dr. Taylor completed a medical source statement, opining that Plaintiff could not "understand/remember simple work instruction" and that he would be unable to "adapt/cope

with low-demand, entry level work." AR 280. Dr. Taylor also observed that Plaintiff "would have difficulty with maintaining regular job attendance and persist[ing] at simple, repetitive work." AR 280. On May 24, 2017, Dr. Taylor opined that "[d]ue to the nature and severity of [Plaintiff's] symptoms, he is unable to obtain or maintain gainful employment." AR 668.

The ALJ assigned "little weight" to Dr. Taylor's opinions, calling them "inconsistent with the claimant's reported work activity on his family fish farm and his ability to ride the bus." AR 19. The ALJ also noted that the "record indicates controlled symptoms with the aid of medication." Id.

Plaintiff makes two primary arguments to challenge the ALJ's rejection of Dr. Taylors opinions. First, he argues that the ALJ failed to consider all the factors under 20 C.F.R. § 416.927(c). Opening Br. 22. Second, he argues that the ALJ failed to provide "specific and legitimate" reasons to reject the medical evidence. Id. at 23. Plaintiff mainly challenges the ALJ's reliance on Plaintiff's daily activities. Id. at 9.

The Court will address each of these points in turn.

### ii. Failure to Consider Factors in 20 C.F.R. § 416.927(c)

First, the Court concludes that the ALJ erred in failing to consider all the factors in 20 C.F.R. § 416.927(c). The Commissioner is right that the ALJ need not "discuss

explicitly every factor in 20 C.F.R. § 416.926(c)." Resp. Br.
11 n.5. Indeed, "the Ninth Circuit has never compelled such a
specific analysis." <u>Yantos v. Berryhill</u>, No. 15-cv-02733, 2018
WL 899126, at *6 (S.D. Cal. Feb. 14, 2018). But the ALJ was
"certainly required to <u>consider</u> all the factors," and he did not
do so here. <u>Id.</u> (emphasis added).

A close examination of the ALJ's decision does not
show that he considered all the factors. Although the ALJ
declared that he "considered opinion evidence in accordance with
the requirements of 20 CFR 416.927," he never identified any
medical sources as "specialists," and he made no mention at all
of the treatment history between Plaintiff and each opining
doctor.[16] <u>See</u> AR 15-21 (step four analysis); <u>see also</u> <u>Tiffany</u>
<u>M. P. v. Comm'r of Soc. Sec.</u>, No. ED CV 18-00933 MWF(RAO), 2019
WL 3215856, at *1 (C.D. Cal. July 17, 2019) (finding error where
"[t]he ALJ did not indicate that he considered [the doctor's]
specialization, frequency of examination, or length of treatment
relationship."). For example, one would not know from reading

---

[16] Plaintiff briefly mentions that the ALJ gave "great weight to Dr.
Luke, who examined [Plaintiff] for the Social Security Administration almost
two years prior to his onset date and Dr. Young who never examined
[Plaintiff] at all." Opening Br. 21 (footnote omitted). He also suggests in
a footnote that the ALJ erred in considering Dr. Luke's opinion at all
because it predates the onset period, but Plaintiff himself then relies on
another pre-onset opinion by Dr. Fishman. <u>Id.</u> at 25 n.2. He expands on
these arguments some in his reply brief, but the Court is not inclined to
consider an ancillary argument raised in a footnote. <u>Cf.</u> <u>United States v.</u>
<u>Strong</u>, 489 F.3d 1055, 1060 n.4 (9th Cir. 2007) ("The summary mention of an
issue in a footnote, without reasoning in support of the appellant's
argument, is insufficient to raise the issue on appeal.").

the ALJ's decision that Dr. Taylor had treated Plaintiff for several years. <u>See</u> AR 18-19. It is hard to even tell from reading the decision which doctors are "treating" versus "examining." <u>See</u> <u>id.</u> For these reasons, the Court cannot confidently say that the ALJ considered all the regulatory elements.

That the ALJ found Dr. Taylor's opinion to be "not consistent with the record," Resp. Br. 11, does not, as the Commissioner argues, excuse the failure to consider the regulatory factors. Even accepting such inconsistencies, the analysis would not end there. The ALJ then must consider the § 416.927(c) factors to decide what weight to give the opinion. <u>See</u> <u>Kovach v. Berryhill</u>, No. 18-cv-1848-GPC(MSB), 2019 WL 2995824, at *3 (S.D. Cal. July 9, 2019) ("If there is substantial evidence in the record contradicting the opinion of the treating physician, the opinion is no longer given 'controlling weight' and the ALJ must consider the factors listed in [the regulation] in determining what weight to give the opinion of the treating physician" (citing <u>Orn</u>, 495 F.3d at 632)). Here, the ALJ simply rejected the opinion based on perceived inconsistencies and failed to consider all the relevant factors to weigh Dr. Taylor's opinion. Failing to do so "is reversible legal error and is not harmless." <u>Tiffany M.</u>

P., 2019 WL 3215856 at *1 (citing Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017)).

### iii. Inconsistency with Plaintiff's Daily Activities

The Court now turns to the heart of Plaintiff's argument:  that the ALJ erred in rejecting Dr. Taylor's opinions based on Plaintiff's daily living activities.  Opening Br. 9-10. The relevant question is whether Plaintiff's daily activities are inconsistent with the medical opinions of his treating doctor.  The Court concludes they are not.

"An inconsistency between a treating physician's opinion and a claimant's daily activities may be a specific and legitimate reason to discount a treating physician's opinion where . . . a holistic review of the record supports this finding." Belmontez v. Colvin, No. ED CV 14-1590-PLA, 2015 WL 2063945, at *5 (C.D. Cal. May 4, 2015) (citing Ghanim, 763 F.3d at 1162).  But the Ninth Circuit has clarified that a claimant "need not be completely incapacitated to receive benefits." Ghanim, 763 F.3d at 1162.  And many daily activities are not "easily transferrable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Orn, 495 F.3d at 639 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Thus, when a claimant's activities are "not in tension with the

opinions of his treating providers," the ALJ may not discount those opinions.  Ghanim, 763 F.3d at 1162-63.

The Ninth Circuit has clarified that an "occasional indicia of improvement" or some "minimal capacity" to perform basic activities is not "an adequate evidentiary basis to reject the opinions of a treating physician or other treating providers."  Ghanim, 763 F.3d at 1162-63 (footnote omitted). The court has also cautioned against finding daily activities inconsistent with a claimant's purported symptoms or limitations "because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."[17/]  Garrison, 759 F.3d at 1016 (citing Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996); Fair, 885 F.2d at 603).

Here, the Court agrees with Plaintiff that the ALJ construed undeveloped portions of the record to make Plaintiff look functional in any work situation, while ignoring other

_____

[17/]   Whether daily activities are inconsistent with a claimant's purported symptoms or a doctor's opinion is inherently a factual inquiry.  In some cases, the Ninth Circuit has held that a claimant's participation in basic activities or household chores is not enough to conclude he is not disabled.  E.g., Ghanim, 763 F.3d at 1161-63 (holding that ALJ erred in using claimant's household chores and occasional socialization to undermine opinions of treating providers); Garrison, 759 F.3d at 1015-16 (holding that ALJ erred in using claimant's activities—talking on the phone, preparing meals, caring for her daughter—to undermine symptom testimony).  In others, the court has relied on basic daily activities to undermine a claimed disability.  E.g., Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (affirming ALJ's determination that claimant's purported "inability to tolerate even minimal human interaction was inconsistent with her daily activities," including taking walks, attending church, and shopping).

factors and evidence of his limitations.  The Court is not convinced that Plaintiff's activities riding the bus and working in a narrow capacity on his family's fish farm are actually inconsistent with Dr. Taylor's opinions describing Plaintiff's psychological limitations.

For one, Plaintiff's activities appear to be isolating.  He lived and worked at his family's property, with minimal interaction with anyone other than his family members.[18/] Plaintiff presumably had the freedom to engage with the fish and move or package tanks on his time.  He may have taken rest breaks.  He may have sought assistance from family members.  He may have relied on the freedom to step away from his tasks when his symptoms intensify.  These are significant qualifications considered with Dr. Taylor's opinion that he would struggle with minimal interaction and regular job attendance.  Not to mention, the vocational expert testified that Plaintiff could not sustain any of the jobs identified at the assigned RFC if Plaintiff "was off task at least 15% of the time . . . due to his mental illness."  AR 276.

---

[18/]  Plaintiff points to the fact that his work on the fish farm required "special conditions" that negate a showing that he could actually work under Step 5.  Id. at 11 (citing 20 C.F.R. § 416.974(c)).  However, Plaintiff is citing the portion of the regulation relevant to step one: substantial gainful employment.  See 20 C.F.R. § 416.974(c) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity.").  The Court declines to apply this portion of the regulation because the ALJ did not consider Plaintiff's activities on the fish farm to be "substantial gainful employment" under step one, nor does Plaintiff challenge the ALJ's findings at step one.

Another interesting element is the record's portrayal of Plaintiff's relationship with fish-related activities. As the Commissioner's brief implies, Resp. Br. 11-12, caring for the fish was apparently something of a relaxation tool for Plaintiff. See, e.g., AR 638 ("keeping busy farming his fish"), 642 ("enjoys raising tropical fish") ("[farming fish] takes away my stress"); see also AR 596 (report of Dr. Hermosura, treating provider, observing that Plaintiff's improvement was the result of, inter alia, "pleasant activities"). In that sense, Plaintiff's activities fish farming—something he finds enjoyable, familiar, and comforting—is likely not "easily transferrable to what may be the grueling environment of the workplace." Trevizo, 871 F.3d at 682 (quoting Fair, 885 F.2d at 603); see also Garrison, 759 F.3d at 1017 (holding that ALJ must interpret reports of improved symptoms "with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace").

"Moreover, [i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired for work than their signs and symptoms would indicate." Garrison, 759 F.3d at 1017 n.22 (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir.

2001)).  The nearly 800-page record, including medical opinion evidence, shows that Plaintiff has indeed structured his life in such a way to limit his environmental stressors and manage his symptoms.

Admittedly, Plaintiff's activities on his family fish farm present, at first glance, as more than the typical household chores often at issue in other cases.  E.g., Garrison, 759 F.3d at 1016; Ghanim, 763 F.3d at 1162-63.  But Plaintiff's tasks are limited, arguably therapeutic, and done in a controlled environment.  At the least, his activities do not appear to be tension with Dr. Taylor's opinion that Plaintiff struggles with audio hallucinations, anger, fatigue, poor concentration, and difficulty interacting with non-family members.

Even more compelling, the record is underdeveloped as to the details of Plaintiff's activities.  Plaintiff is correct that the ALJ has an "independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288).  The ALJ need not, however, "develop the record further where the evidence is unambiguous and the record is adequate."  Caijigal v. Berryhill, No. 17-00478 ACK-RLP, 2018 WL 3000543, at *4 (D. Haw. June 15, 2018).

The Ninth Circuit recently held in <u>Trevizo</u> that an ALJ improperly relied on a claimant's "childcare activities" to reject the opinion of a treating doctor.  871 F.3d at 676.  The ALJ had "repeatedly pointed to [the claimant]'s responsibilities caring for her young adoptive children as a basis for rejecting her disability claim."  <u>Id.</u>  But the record provided "no details" as to what these activities involved:

> The ALJ did not develop a record regarding the extent to which and the frequency with which [claimant] picked up the children, played with them, bathed them, ran after them, or did other tasks that might undermine her claimed limitations, nor did the ALJ inquire into whether [claimant] cared for the children alone or with the assistance of her grandchildren or other family members.

<u>Id.</u>  According to the Ninth Circuit, these activities could not "constitute 'substantial evidence' inconsistent with [the treating physician's] informed opinion, and thus the ALJ improperly relied on [claimant]'s childcare activities to reject the treating physician opinion."  <u>Id.</u>

The ALJ here erred in the same way.  He rejected the opinions of a longtime treating specialist who was well aware of Plaintiff's activities on the family fish farm.  Yet he did so without inquiring about the support or assistance Plaintiff presumably receives by virtue of working in the family business.  Nor did the ALJ discuss the specific tasks he perceived to be inconsistent with Dr. Taylor's opinions of Plaintiff's

<u>psychological</u> impairments.[19/]  The ALJ pointed to no record evidence, and the Court can find none, regarding the length of time Plaintiff actually spends productively completing tasks related to shipping and moving the fish tanks, or the environment at the fish farm—including the impact of his psychological symptoms on his productivity, whether and to what extent he interacts with anyone, and whether and to what extent he takes rest breaks.  Like the childcare activities in <u>Trevizo</u>, Plaintiff's "limited activities" in an isolated home environment appear to be "entirely consistent" with Dr. Taylor's medical opinion that Plaintiff struggled with interactions with non-family members.

As for his ability to ride the bus, the ALJ relied solely on Plaintiff's brief testimony at the hearing that he can "catch the bus."  AR 271.  The ALJ failed to ask any follow-up questions regarding Plaintiff's statement that he rides the bus. For example, it is not clear from the record how often Plaintiff

_____

[19/]  At the hearing, the ALJ's questions about Plaintiff's "work" on his family's farm focused almost exclusively on the physical exertion Plaintiff expends in packaging shipments and moving tanks.  <u>See</u> AR 261-62 ("what's the heaviest thing you do on the job at the fish farm?" "how big are the tanks?" "how do you move them?" "how much do these ten-gallon containers weigh?"); <u>see also</u> AR 266 ("are you on your feet most of the time?").  Not one of these questions targets an understanding of the limitations presented by Plaintiff's <u>psychological</u> impairments, which form the bulk of Plaintiff's claimed impairments.  The ALJ eventually asked some questions about the voices Plaintiff hears and whether treatment quiets them, AR 266-68, 270, but he never inquired as to the environment surrounding the fish farm—like whether Plaintiff works in isolation or with other family members or how his relationship with the fish impacts his ability to handle them day-to-day. Nor did the ALJ ask about Plaintiff's productivity or efficiency in his tasks on the fish farm.

rides the bus, what his experiences are while riding the bus, and whether and to what extent he interacts with anyone during the ride. Absent specific details about the nature of his activities, Plaintiff's brief, undeveloped testimony cannot undermine other evidence of impairments or limitations. See, e.g., Theresa M. K., 2019 WL 2550317 at *7 (holding that ALJ erred in relying on claimant's "brief" testimony of history driving a school bus and handling financial matters when "the records contain[ed] no specific details" of the activities, like how long it took to complete them (footnote omitted)). That being the case, the ALJ's insinuation from Plaintiff's brief statement that he "catch[es] the bus" does not constitute substantial evidence such to undermine Dr. Taylor's opinions.

The Commissioner argues that "the record does not indicate that the fish farm was a sheltered workplace or that Plaintiff performed less than five hours of actual work every day." Resp. Br. 12. The Court is not prepared to make those inferences when the record certainly does not show that the fish farm was an environment comparable to a workplace or that Plaintiff's daily tasks would translate to general job skills. The Commissioner ignores Plaintiff's psychological limitations that may inhibit his ability to participate in even similar

tasks in a competitive environment.[20/]  If this were a question

of _physical_ impairments, perhaps Plaintiff's activities (being

on his feet, moving fish tanks) would be more damning.  But it

is Plaintiff's _psychological_ challenges that are at issue here.

And those challenges as described in Dr. Taylor's opinions are

consistent with the specific activities Plaintiff described.

This is not to say that the ALJ may, upon remand, further

develop the record and conclude that Plaintiff's activities do

in fact conflict with his purported inability to work.  But the

Court is not convinced that the limitations portrayed in the

record would, as the ALJ assumed, translate to a traditional

workplace.

       The ALJ erred in accepting Plaintiff's testimony that

he "works" on his family fish farm as evidence that he can work

in other specified jobs just the same.  The Court concludes that

the ALJ's reasoning was erroneous; Plaintiff's daily activities

described in the record are not specific and legitimate reasons

for rejecting Dr. Taylor's opinions.

---

[20/]  The Commissioner also raises as a reason to affirm the ALJ's
decision the fact that Plaintiff appears to have been caring for his disabled
father.  The ALJ did not cite this as a reason and the Court "is constrained
to review the reasons the ALJ asserts."  Montalbo v. Colvin, 231 F. Supp. 3d
846, 857 (D. Haw. 2017).

**C. Whether the ALJ Improperly Rejected a Portion of the Medical Opinion of Treating Psychologist, Dr. Hermosura**

### i. Medical Opinions, the ALJ's Analysis, and the Parties' Arguments

Dr. Hermosura is a psychologist who treated Plaintiff for five months. Opening Br. 21, 24; AR 19, 595-98. Dr. Hermosura opined that Plaintiff "is capable of understanding and remembering simple work instructions" and of "maintaining regular job attendance when his depressive and manic symptoms are under control." AR 597. He also reported that Plaintiff "is able to engage in simple, repetitive work tasks on a regular basis under ordinary supervision" but that he may "struggle" with even "minimal" contact with supervisors and co-workers "if he is symptomatic due to his anger problems." Id. Dr. Hermosura also noted that Plaintiff could cope with a low-demand, entry level job "[i]f his symptoms are under control and contact with people were minimal." Id.

In discussing Plaintiff's prognosis, Dr. Hermosura acknowledged that he had not seen Plaintiff in two months while Plaintiff was incarcerated, "so assessing his current functioning may difficult." Id. at 597. Dr. Hermosura noted, "I would imagine that due to incarceration, [Plaintiff's] stress level has risen, which could have led to a relapse of symptoms." Id.

The ALJ assigned "great weight" to Dr. Hermosura's opinions and concluded that the assigned RFC "accommodates Dr. Hermosura's concerns." AR 19. The ALJ's analysis summarized Dr. Hermosura's opinions with respect to Plaintiff's capabilities and limitations in a work setting when his symptoms are controlled, but the analysis did not mention Dr. Hermosura's statement about Plaintiff's symptoms possibly relapsing. See AR 18-19.

Plaintiff does not object to the ALJ giving Dr. Hermosura's opinion significant weight in general. He only objects to the ALJ's "fail[ure] to address Dr. Hermosura's opinion that stress could cause a relapse in symptoms." Opening Br. 24. According to Plaintiff, the ALJ's RFC analysis only affords "great weight" to part of Dr. Hermosura's opinion: that Plaintiff can function when his symptoms are controlled. Id. at 24-25; Reply Br. 4. The ALJ, Plaintiff argues, failed to provide any specific or legitimate reason to discount the portion of the opinion that stress may exacerbate Plaintiff's symptoms. Opening Br. 24-25.

The Commissioner replies that the record reflects "good improvement and good response to treatment" and the evidence later submitted to the Appeals Council "corroborates this pattern of consistent improvement." Resp. Br. 8-9. The Commissioner addresses the potential of Plaintiff's symptoms

worsening by stating that Dr. Hermosura "was not aware of whether Plaintiff's symptoms had worsened" and "[t]he record confirms that they had not." Id. at 9. According to the Commissioner, Dr. Hermosura's opinion was only contemplating "the stress of going to prison" and merely working under the assigned RFC "does not rise to that level." Id. Finally, the Commissioner also argues that Dr. Hermosura's concerns are accounted for in the RFC designation and "[t]he ALJ reasonably translated Dr. Hermosura's recommendations into concrete restrictions." Id. (citing Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015)).

### ii. Analysis

The Court concludes that the ALJ erred in failing to fully address Dr. Hermosura's opinion. Dr. Hermosura's concern of a possible worsening of symptoms and his observation that Plaintiff may struggle more when symptomatic constitute important qualifications of his medical opinion. Instead of addressing those qualifications, the ALJ selectively considered only the portion of the opinion concluding that Plaintiff could perform certain tasks under certain limitations, assuming that his symptoms are under control. In doing so, the ALJ erred.

District courts routinely find error when an ALJ fails to address opinions or limitations offered by treating doctors. See Betts-Cossens for Betts v. Berryhill, No. 16-00409 ACK-KJM,

2017 WL 2598889, at *4-5 (D. Haw. June 15, 2017) (collecting cases).  When an ALJ ignores a portion of an opinion, he effectively rejects it.  Smolen, 80 F.3d at 1282.  And, although the ALJ need not agree with the entirety of a medical opinion, "he must have, at the very least, offered sufficiently specific and legitimate reasons for each opinion []he rejected; the ALJ may not specifically reject some opinions and wholly disregard others."  Betts-Cossens for Betts, 2017 WL 2598889 at *4 (citing Smolen, 80 F.3d at 1286; Khan v. Colvin, No. EDCV 12-2106-MAN, 2014 WL 2865173, at *8 (C.D. Cal. June 24, 2014)).

        Here, the ALJ failed to offer any reason for disregarding the part of Dr. Hermosura's opinion foreseeing a possible increase in symptoms.  The analysis instead is limited to considering Plaintiff's capabilities as if his symptoms are always under control.  The ALJ does not consider the impact of a symptom relapse or of Plaintiff's ongoing treatment plan (which ensures symptoms stay controlled).  Cf. Hutsell, 259 F.3d 707 ("[T]he Commissioner erroneously relied too heavily on indications in the medical record that [claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to [his] work-related functional capacity.").  Not to mention, the ALJ says nothing about the factors under 20 C.F.R.

§ 416.927(c)(1)-(6), which inform the weight given to a medical opinion of a treating doctor.

The Commissioner's attempt to remedy the defect by now offering its own interpretation of the record is unavailing. The Court must review the ALJ's decision based on the ALJ's reasoning and factual findings. See Bray, 554 F.3d at 1225. The Commissioner implicitly asks the Court to engage in a sort of post hoc rationalization to justify the ALJ's ignoring a probative portion of Dr. Hermosura's opinion. See Resp. Br. 8-9. This the Court cannot do. See Bray, 554 F.3d 1225-26. The Court "is constrained to review the reasons the ALJ asserts; otherwise a reviewing court will be unable to review those reasons and without improperly substituting [its] conclusions for the ALJ's or speculating as to the grounds for the ALJ's conclusions." Montalbo v. Colvin, 231 F. Supp. 3d 846, 857 (D. Haw. 2017) (citing Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Bray, 554 F.3d at 1225).

The Commissioner would have the Court review the record and decide that "what Dr. Hermosura feared fortunately did not occur" and that the RFC incorporates Dr. Hermosura's concerns. Resp. Br. 9. The ALJ did broadly note that the RFC "accommodates Dr. Hermosura's concerns." AR 19. But he never acknowledged one of those primary concerns: a possible increase in symptoms. The only "concerns" mentioned are limitations to

Plaintiff's capacity while the symptoms are "<u>under control</u>."  AR

19 (emphasis added).  In other words, Plaintiff's capabilities

and limitations were incorporated into the RFC under the

assumption that his symptoms were <u>always</u> controlled.  This

assumption was error:

> With regard to mental disorders, the
> Commissioner's decision must take into account
> evidence indicating that the claimant's true
> functional ability may be substantially less
> than the claimant asserts or wishes.  Given
> the unpredictable course of mental illness,
> [s]ymptom-free intervals and brief remissions
> are generally of uncertain duration and marked
> by the impending possibility of relapse.

<u>Garrison</u>, 759 F.3d at 1017 n.22 (quoting <u>Hutsell</u>, 259 F.3d at

711) (quotation marks and citations omitted).

Perhaps had the ALJ reasoned—as the Commissioner urges

the Court to do now—that the record refutes the likelihood of a

relapse of symptoms, then those reasons would have been at least

specific, if not also legitimate.[21/]  Here, however, the ALJ

offered no reason at all, and the Court cannot affirm the ALJ's

decision on grounds which the ALJ did not rely.  The ALJ did not

make those arguments himself, and the Court declines to do so

for him now.

---

[21/]  This is not to say that the Commissioner's characterization of the
record is entirely accurate or persuasive.  The bottom line is that the ALJ
did not offer <u>any</u> reason for implicitly rejecting this portion of Dr.
Hermosura's opinion, which is legal error.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.

Because a medical opinion of a treating doctor can only be rejected for specific and legitimate reasons based on substantial evidence in the record, the ALJ erred by not discussing a probative portion of Dr. Hermosura's opinion. Although remand is already warranted for the reasons discussed elsewhere in this Order, the ALJ should also reexamine Dr. Hermosura's reports with careful attention to considering each part of his opinions.

### D. Whether the ALJ Improperly Rejected the Opinions of Examining Psychologist, Dr. Fishman

#### i. Medical Opinions, the ALJ's Analysis, and the Parties' Arguments

Dr. Fishman examined Plaintiff three times in connection with Plaintiff's applications for state disability benefits. AR 20; see also Resp. Br. 17. Dr. Fishman examined Plaintiff on October 1, 2013; August 4, 2014; and April 12, 2017. Opening Br. 25 (citing AR 674, 680, 699). After each of these examinations, Dr. Fishman opined that Plaintiff would be incapacitated for another temporary period (usually six months). AR 697-700. In the 2013 report, Dr. Fishman checked the boxes suggesting that Plaintiff had seclusiveness or autistic thinking, delusions, hallucinations, fatigue/loss of energy, sleep disturbance, difficulty concentrating for thinking, depressed mood, motor tension, and paranoid thinking. See AR 674, 680, 699; see also Opening Br. 25. Dr. Fishman also

concluded that Plaintiff was able to participate in activities "less than 30 hours weekly with reasonable accommodations," AR 675, 681, 700, and that he was "[v]ery [l]imited" in his ability to "perform[] complex tasks independently" and to "adapt[]/cop[e] with a low demand, entry-level job," AR 700. The ALJ assigned "little weight" to Dr. Fishman's opinions.

Plaintiff first addresses the fact that Dr. Fishman's 2013 and 2014 opinions predate the disability onset date of January 6, 2015.  Opening Br. 25 n.2.  He preemptively argues that Dr. Fishman's opinions are still relevant to the time period at issue and that the ALJ also considered other opinions predating the onset date.  Id.  Next, Plaintiff emphasizes that Dr. Fishman's examination used the "same criteria" the SSA uses to determine whether a claimant is disabled.  Id. at 25-26; Reply Br. 11.  Plaintiff's arguments accept that the ALJ gave "specific" reasons for rejecting Dr. Fishman's opinion but maintain that the reasons are "not legitimate."  Id. at 27.

The Commissioner argues in response that the ALJ correctly afforded less weight to Dr. Fishman's opinions because they were not an "earnest attempt to determine permanent restrictions."  Resp. Br. 18 (quoting AR 20).  In addition, the Commissioner asserts that Dr. Fishman's opinions would probably cut against Plaintiff anyway because Dr. Fishman always declined to "check a box stating that Plaintiff was permanently disabled,

and should apply for SSI." Resp. Br. 18. Even to the extent
that Dr. Fishman's opinions support greater restrictions, the
Commissioner argues that the opinion that Plaintiff could only
engage in activities "less than 30 hours per week" is
inconsistent with Plaintiff's work on the family fish farm for
35 hours per week. Id.

### ii. Analysis

The ALJ's rationale in rejecting Dr. Fishman's opinion
was threefold: (1) Dr. Fishman's opinions were for a temporary
duration so do not translate to permanent restrictions; (2) Dr.
Fishman's contact with and knowledge of Plaintiff was limited;
and (3) Plaintiff's "work activity" on his family's fish farm is
inconsistent with Dr. Fishman's opinions. AR 20. Because he
cited his rationale for rejecting Dr. Fishman's opinions,
Plaintiff concedes that the ALJ properly provided "specific"
reasons. Opening Br. 27. The Court will thus focus on whether
each of these reasons is "legitimate."

### 1. Temporary Nature of State Agency Benefits

The Court rejects the ALJ's first proffered reason:
the temporary nature of state agency benefits.

"[A]dministrative law judges are not bound by findings
made by state agency or other program physicians and
psychologists, but they may not ignore these opinions and must
explain the weight given to the opinions in their decisions."

Henderson v. Astrue, 634 F. Supp. 2d 1182, 1191 (E.D. Wash. 2009) (citing SSR 96-6p). Certain issues, such as the ultimate conclusion whether a claimant is disabled, are reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). Otherwise, the SSA regulations provide certain factors that ALJs should consider in weighing medical opinions. Id. § 416.927(c)(1)-(6).

Here, the mere fact that Dr. Fishman's reports were prepared in connection with state benefits does not provide a legitimate basis for rejecting them. See Henderson, 634 F. Supp. 2d at 1192 (citing Lester, 81 F.3d at 932). The ALJ primarily reasons, however, that Dr. Fishman's opinions "were all for a temporary duration." AR 20.

As Plaintiff points out, Dr. Fishman evaluated Plaintiff pursuant to Hawaii Administrative Rule § 17-658-5(a):

> The categorical eligibility requirement for a disabled individual is that the individual be unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which may be expected to result in death or which has lasted or may be expected to last for a continuous period of not less than twelve months.

The ALJ was correct that the purpose of Dr. Fishman's evaluations was to opine on Plaintiff's ability to work for a limited period. But, in finding Plaintiff unable to work because of his disability, Dr. Fishman implicitly held—pursuant to Hawaii law—that Plaintiff's disability lasted or would last a

minimum of 12 months.  See AR 697-700 (incapacitated through April 2014); AR 671-75 (incapacitated through February 2015); 677-81 (incapacitated through October 2017); see also Nicholson v. Berryhill, No. 17-00508 HG-KJM, 2018 WL 6198272, at *13-14 (D. Haw. Nov. 28, 2018).

That Dr. Fishman's opinions were forward looking for a discrete time period does not mean they are irrelevant to considering appropriate restrictions on a more permanent basis. Compare Nicholson, 2018 WL 6198272 at *13-14 (holding that ALJ erred when it rejected state-agency medical report as not indicative that the 12-month duration of disability was satisfied), with Weiss v. Astrue, No. 12-cv-0719 [Doc. No. 21] (S.D. Cal. November 7, 2012) (magistrate judge's report and recommendation upholding ALJ's rationale that treating doctor's report "was only intended to cover a temporary two-month period"), adopted by 2013 WL 4517863 (S.D. Cal. Aug. 19, 2013). Under these circumstances, the Court concludes that the "temporary duration" argument is not a legitimate reason to reject Dr. Fishman's opinions.

This Court's conclusion is not changed by the Commissioner's argument that Dr. Fishman did not find Plaintiff "permanently disabled" and expressly chose not to refer him for SSI benefits by checking a box in the evaluation form.  Resp. Br. 18.  The ALJ made no findings whatsoever on this point and

the Court has no power to "assess the ALJ's reasoning with respect to [Dr. Fishman's] completion of the forms when the record does not provide any findings by the ALJ on the issue." Nicholson, 2018 WL 6198272 at *14.

## 2. "Limited" Contact with Plaintiff

Next, the Court turns to the ALJ's rationale that Dr. Fishman's contact with Plaintiff was "limited," thus justifying less weight to the opinion.

An examining doctor's "limited contact" with a claimant is not enough to reject the doctor's medical opinions. Henderson, 634 F. Supp. 2d at 1192; see also Lester, 81 F.3d at 833 (holding that it was improper for ALJ to reject examining psychologist's opinion due to "limited observation"). "By definition, an examining [doctor] does not have an ongoing relationship with a claimant." Henderson, 634 F. Supp. 2d at 1192. In Henderson, a district court in this circuit rejected the ALJ's rationale that opinions in connection with state benefits "are inadequate because they are the results of one-time examinations." Id. By that reasoning, the court observed, "the opinions of all examining physicians or psychologists should be discarded," because they are based on discrete examinations rather than ongoing treatment. See id. ("The regulations and case law require consideration and appropriate weighting of examining physician opinions. . . . Thus, the

ALJ's implication that the [examining] medical opinions should be rejected in part because they are based on one-time exams is erroneous." (citing <u>Lester</u>, 81 F.3d at 830)).

That so, it may be proper in some instances for an ALJ to assign less weight to an opinion because of the cursory nature or format of the opinion; for example, a "check-box form report of a single examination." <u>Id.</u>; <u>see, e.g.</u>, <u>Crane</u>, 76 F.3d at 253 ("The ALJ, however, permissibly rejected [the evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions."); <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that ALJ properly discounted treating doctors' opinions because they were in the form of a checklist without supportive evidence). Here, however, the ALJ did not cite the check-box format as a reason for giving little weight to Dr. Fishman's reports. <u>See</u> AR 20. As discussed several times in this Order, the Court "is constrained to review the reasons the ALJ asserts." <u>Montalbo</u>, 231 F. Supp. 3d at 857 (citing <u>Brown-Hunter</u>, 806 F.3d at 492).

For the reasons discussed, the ALJ's determination that Dr. Fishman "has limited contact with the claimant and could only get a small snapshot of his functioning" is not a

legitimate reason for affording less weight to Dr. Fishman's
opinions.[22/]

### 3. Inconsistencies with the Record

Finally, the ALJ's conclusion that Dr. Fishman's
opinions are inconsistent with Plaintiff's "work" activity on
his family's fish farm and ability to ride the bus is not a
legitimate reason for discounting the opinions. As discussed,
the Court is not convinced that the ALJ fully developed the
record with respect to Plaintiff's "work" on his family's fish
farm. For the same reasons discussed _supra_ with respect to Dr.
Taylor and _infra_ with respect to Plaintiff's symptom testimony,
the ALJ erred in finding Plaintiff's daily activities to be
inconsistent with Dr. Fishman's opinions.

For the reasons stated, the ALJ erred in rejecting Dr.
Fishman's opinions without citing specific and legitimate
reasons for doing so.

---

[22/] The Court acknowledges the ALJ's further observation that "[i]t is
unclear if Dr. Fishman was aware of the claimant's work on his family's
farm." AR 20. The Commissioner relies on this point to argue that Dr.
Fishman's opinion was entitled to less weight because he was less familiar
with the record. Resp. Br. 19 (citing 20 C.F.R. § 416.927(c)(6)). While the
Commissioner is correct that an ALJ may consider a medical source's
familiarity with the record, 20 C.F.R. § 416.927(c)(6), Dr. Fishman's reports
suggest at least some knowledge of Plaintiff's activities with his family's
fish, as well as other symptoms and daily activities. _E.g._, AR 673 ("Anxious
dealing with others. Enjoys working with Fish Tanks."). There is nothing to
suggest from Dr. Fishman's examination notes and reports that he lacked a
general familiarity with the Plaintiff's case record at the time of his
examinations. And, as discussed, the reported symptoms and limitations are
not necessarily inconsistent with Plaintiff's activities on the fish farm.
Even Dr. Taylor—Plaintiff's longtime treating psychologist with an extensive
understanding of Plaintiff's activities of the last few years—opined that
Plaintiff was incapable of work.

## VI.  Whether the ALJ Erred in His Credibility Finding of Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred in giving only partial weight to his testimony about the limitations of his symptoms, side effects of his medication, and the extent to which his symptoms are "controlled."  Opening Br. 16-17. Plaintiff also argues that the ALJ erred in failing to mention certain of his symptom testimony at all.  Id. at 16-18; Reply Br. 13-15.  For many of the same reasons the ALJ rejected the medical opinions discussed above, the ALJ discounted Plaintiff's symptom testimony as inconsistent with his daily activities. Opening Br. at 16-19.  In doing so, the ALJ again erred.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  Molina, 674 F.3d at 1112.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Id.  "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."  Id.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Id. And a "finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter, 806 F.3d at 493.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 16. But, in making his RFC determination, the ALJ explained that "the claimant is not as limited as alleged and [is] capable of performing work at the above residual functional capacity." AR 18. The ALJ mentioned and partially discredited Plaintiff's testimony that he had difficulty performing basic work activities and that he "has trouble being around others due to the voices in his head." AR 16-18. According to the ALJ, "the claimant's symptoms are sufficiently controlled for work within the bounds of the [assigned RFC]." AR 17. Plaintiff contends that the ALJ's

credibility determination was error.  Opening Br. 9, 16-19.
Because the ALJ failed to provide the requisite specific, clear
and convincing reasons for rejecting a claimant's testimony, the
Court agrees.

In rejecting Plaintiff's testimony about the severity
and impact of his symptoms, the ALJ relied on Plaintiff's
reported daily activities.  See AR 15-16.  After listing aspects
of Plaintiff's testimony about his symptoms, the ALJ described
Plaintiff's testimony about his activities of daily living,
including working on the family fish farm and taking the bus.
Id.  The ALJ noted that Plaintiff "works on the family fish farm
daily for approximately five hours a day," where he is "on his
feet" and "helps monitor, raise, and ship small aquarium fish."
AR 15-16.  On that basis, the ALJ concluded that Plaintiff's
"statements about the intensity, persistence, and limiting
effects of his symptoms" are "inconsistent with . . . treatment
evidence and activities of daily living."  AR 16.

"Engaging in daily activities that are incompatible
with the severity of symptoms alleged can support an adverse
credibility determination."  Trevizo, 871 F.3d at 682 (quoting
Ghanim, 763 F.3d at 1165).  But participating in some daily
living activities is not necessarily "inconsistent" with an
inability to work as the result of a disability.  See Revels v.
Berryhill, 874 F.3d 648, 667-68 (9th Cir. 2017).  After all,

impairments that would "unquestionably preclude work and all the pressures of a workplace environment" are often consistent with participating in daily life and doing more than "resting in bed all day." Garrison, 759 F.3d at 1016.

Here, the ALJ's conclusion that Plaintiff's daily activities—"working" at his family's farm and riding the bus—are inconsistent with his symptom testimony is not supported by the substantial evidence in the record. First, as discussed supra, the record is undeveloped and vague as to the specific activities Plaintiff was engaged in and how often. The ALJ also fails to connect the dots as far as how Plaintiff's limited activities would be transferable to traditional work. Sure, Plaintiff is physically able to move and package fish tanks. But that "skill" is of little value in the workforce when his psychological symptoms severely limit the environment in which he can perform. Put simply, the undeveloped record and the ALJ's cursory analysis do not present "an adequately specific conflict" between Plaintiff's reported limitations and his daily living activities." Trevizo, 871 F.3d at 682 (remanding ALJ decision because there was "almost no information in the record" about claimant's activities).

Even if the ALJ's proffered reasoning could be viewed as specific, it fails to meet the threshold of "clear and convincing." That Plaintiff spent his time on the family fish

farm (at an unknown level of productivity and with known limiting psychological effects) and that he could occasionally ride the bus (for unknown time periods and with unknown regularity) do not constitute "clear and convincing" reasons to discredit his testimony.  As alluded to throughout this Order, Plaintiff's participation in these vaguely-described activities is not necessarily inconsistent with his alleged symptoms.  On the whole, the analysis supplied does not present specific, clear and convincing reasons to discredit Plaintiff's testimony.

Turning briefly to Plaintiff's argument that the ALJ erred in failing to address all the symptoms Plaintiff alleged, the Court disagrees.  An ALJ need not address every aspect of a claimant's testimony to find him not credible.  E.g., Glenn v. Comm'r of Soc. Sec. Admin, No. CV-16-04268-PHX-DGC, 2017 WL 4349394, at *5 (D. Ariz. Oct. 2, 2017) ("It is impractical for an ALJ to address every finding and every statement in the record."); Williams v. Astrue, 2012 WL 1145090, at *12 (W.D. Wash. Mar. 14, 2012) ("[T]here is no requirement that the ALJ address every aspect of such testimony in order to find her not fully credible overall regarding her complaints.").

Here, the Court is satisfied with the ALJ's overview of Plaintiff's reported symptoms and his statement that he "considered all symptoms."  AR 15-16.  That the ALJ did not explicitly mention every part of Plaintiff's testimony is not in

itself error.[23/]  The ALJ adequately pointed to the parts of
Plaintiff's testimony he found not credible.

Nonetheless, for the reasons stated earlier, the Court
finds the ALJ's credibility assessment based on his analysis of
Plaintiff's daily living activities to have been in error.

## VII.  Harmless Error and Remand

The errors at issue were not harmless.  "An error is
harmless only if it is inconsequential to the ultimate non-
disability determination . . . or if despite the legal error,
the agency's path may reasonably be discerned."  Brown-Hunter,
806 F.3d at 494 (internal quotation marks and citation omitted)
(finding that because the ALJ did not provide any reasons upon
which her conclusion was based, the agency's path could not be
reasonably discerned).  To consider an error harmless, the
reviewing court must be able to "confidently conclude that no
reasonable ALJ, when fully crediting the testimony, could have
reached a different disability determination." Marsh v. Colvin,
792 F.3d 1170, 1173 (9th Cir. 2015).

Had the ALJ properly weighed and analyzed the opinions
of Plaintiff's treating and examining psychologists—including

---

[23/]  Plaintiff's reliance on Treichler on this point is misplaced.  See
Reply Br. 14 (citing Treichler, 775 F.3d 1090).   There, the court rejected
boilerplate language similar to that used by the ALJ here.  Treichler, 775
F.3d at 1102-03.  But, in Treichler, the ALJ had made "only the single
general statement" and then provided no further analysis or discussion of
specific testimony.  Id.  The ALJ here made no such error.

the treatment notes and report submitted to the Appeals Council—
as well Plaintiff's own testimony, the ALJ may have given
Plaintiff a more restrictive RFC, with more limitations.  That,
in turn, may have led to a finding that Plaintiff is disabled.
Likewise, the vague discussion and underdevelopment of the
record as to Plaintiff's activities of daily living show that
the ALJ's decision is not supported by substantial evidence in
the record as a whole.  In light of these errors, this Court
cannot confidently conclude that no reasonable ALJ would reach a
different decision. Accordingly, the ALJ's errors were not
harmless.

        "Remand for further administrative proceedings is
appropriate if enhancement of the record would be useful."
Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Only
where the record is fully developed and "further administrative
proceedings would serve no useful purpose," should a court
remand for an immediate award of benefits. Id. "The decision
whether to remand for further proceedings or simply to award
benefits is within the discretion of [the] court." McAllister v.
Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). But the Ninth
Circuit has cautioned that "[a] remand for an immediate award of
benefits is appropriate . . . only in rare circumstances."
Brown-Hunter, 806 F.3d at 495 (internal quotation marks
omitted).

Here, the Court finds that enhancement of the record would be useful, especially in light of the additional records submitted after the ALJ had made his decision. The Court hereby remands for further proceedings to allow the ALJ to properly consider the newly-submitted records, the opinions of Plaintiff's treating and examining doctors, and Plaintiff's testimony.  On remand, the ALJ may conduct a new hearing, further consider the medical evidence—including the later-submitted evidence that pre- and post-dates the ALJ decision—reassess Plaintiff's RFC and the five-step sequential evaluation, issue a new decision, and take any further action deemed appropriate and consistent with this decision.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying SSI benefits and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 9, 2019.



Alan C. Kay
Sr. United States District Judge

Vahey v. Berryhill, Civ. No. 18-00350 ACK-KJM, Order Reversing the Commissioner of Social Security and Remanding for Further Proceedings.